# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY ELLIS, | |
| Petitioner, | NO. 3:18-CV-00621 |
| v. | (JUDGE CAPUTO) |
| WARDEN J. BALTAZAR, | |
| Respondent. | |

## **MEMORANDUM**

Presently before me is Petitioner Rodney Ellis's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1), and Ellis's Motion for Extension of Time to File a Reply (Doc. 8). Ellis, proceeding *pro se*, argues that he was denied due process during a disciplinary hearing. Ellis's Motion for Extension of Time will be granted. But because Ellis received all the process he was due, his Petition will be dismissed.

## I. Background

Ellis was charged on April 30, 2017 with bringing drugs into the prison where he was housed at the time, FCI Allenwood. (*See* Doc. 1 at 21-26). SIS Lieutenant Prutzman issued the investigative report. (*Id.*). Lt. Prutzman's report, which Ellis has attached to his Petition, recounts the following facts:

> On February 24, 2017 at approximately 2:30 pm, the SIS Office recovered (5) strips of thin orange paper, consistent with Suboxone, concealed in a US magazine. . . . The Suboxone recovered was located on the 30th page of the magazine. SIS staff [confirmed the strips contained Suboxone.] . . . The SIS was currently receiving [reliable tips] that [inmate Bryant-Smith] and inmate Ellis . . . were orchestrating drug introductions, via institutional inmate mail . . . . Specifically, they were introducing Suboxone through the magazines. [Ellis and Bryant-Smith] were both located and placed in the Special Housing Unit pending SIS investigation. . . . A review was conducted on the communications (emails and telephone), via TRUVIEW, on inmate Ellis. Based on this review, it was determined inmate Ellis utilized coded emails to introduce narcotics (Suboxone), via inmate institution mail . . . . On February 25, 2017 at 3:51 pm, [Quibiilah Martin, Ellis's friend on the outside,] sends a coded

email to inmate Ellis stating, "That's the same thing I said when I had to fill out the 30 page application." On February 25, 2017 at 5:09:44 pm, inmate Ellis responds through a coded email stating, "30 pages? Man they trippin good. it aint even that serious, they must offering up a major salary to go thru all this bullshit." . . . The Suboxone was discovered on page 30 [of the magazine, which was addressed to Bryant-Smith,] linking the location of the Suboxone to the coded emails of inmate Ellis . . . . . A review was also conducted on the money transactions over the past year, via TRUVIEW, on inmate Ellis. Based on this review, it was determined inmate Ellis was receiving a substantial amount of funds from numerous outside contacts (approximately $8000.00 unaccounted for), in addition inmate Ellis was sending a substantial amount of funds (approximately $5400.00) out of the institution . . . .(*Id.* at 22-23).

Transcribed statements from reliable confidential informants within the prison were included in Lt. Prutzman's report. (*Id.* at 23). All the statements indicated that Ellis was bringing suboxone into the prison through magazines. (*Id.*). Lt. Prutzman also took Ellis's statement. (*Id.*). Lt. Prutzman asked Ellis why he was receiving large sums of money from "outside contacts" and other inmates. (*Id.*). With respect to other inmates, Ellis explained that they pay him "to keep their secret[s]." (*Id.*). As for people outside the prison sending Ellis money, Ellis "admitted he had no knowledge of the identify of any of these contacts." (*Id.*).

A disciplinary hearing was held on May 25, 2017. (*Id.* at 34). The Discipline Hearing Officer Report ("DHO Report"), which Ellis also attached to his Petition, notes that Ellis received advanced written notice of the charges against him on April 30, 2017, and that he was advised of his rights before the DHO on May 9, 2017. (*Id.*). Ellis received the assistance of a staff representative, Dr. Camp. (*Id.*). The DHO Report further notes that Ellis stated at the outset of the hearing: "They were saying I was using code but there is nothing I said to have be involved in this, it was strictly circumstantial and coincidental." (*Id.*). Critically, the DHO Report states "No procedural issues were cited and no documentary evidence was provided for consideration." (*Id.*). Additionally, Ellis waived his right to present witnesses. (*Id.*).

2

The DHO considered Lt. Prutzman's report, the TRUVIEW reports regarding Ellis's emails and finances, information from confidential informants, and other documentary evidence. (*See id.* at 35). The DHO essentially credited Lt. Prutzman's investigative conclusions and found that the greater weight of the evidence inculpated Ellis. (*See id.* at 35-36). Accordingly, the DHO determined that Ellis committed the offenses of introducing narcotics into the prison (Code 111) and disrupting or interfering with the "security or orderly running of the institution, most like, Use of the telephone for illegal purpose or to commit or further a Greatest category prohibited act" (Codes 111, 199(197)). (*Id.* at 36-37). As sanctions for these offenses, Ellis received a total of sixty (60) days of disciplinary segregation, disallowance of eighty-two (82) days of good conduct time, forfeiture of 352 days of non-vested good conduct time, a fine of $1,000.00, and loss of visiting, phone, and email privileges for eighteen (18) months. (*Id.* at 17, 37). Ellis appealed the DHO's decision, but both of his appeals were denied. (*Id.* at 27-33).

Ellis filed the instant Petition on March 19, 2018, and raises three grounds for relief: first, that Lt. Prutzman cherry-picked inculpating emails, which the DHO in turn erroneously relied upon (*see id.* at 12-14); second, that the DHO failed to consider certain exculpatory evidence (an actual thirty-page job application and emails between Quibiilah Martin and a prospective employer) or explain why it refused to consider it (*id.* at 15-17); and third, that the evidence against Ellis was insufficient to show he had the requisite *mens rea* to commit the offenses at issue (*id.* at 16-17). The Government responded, arguing that "Ellis received all due process procedures to which he is entitled and the DHO's decision is based on sufficient evidence." (Doc. 7 at 1). Ellis filed a Motion for Extension of Time to File a Reply (Doc. 8),[1] then filed a traverse which further explained his Petition and argued the

---

[1] The Government has not opposed Ellis's Motion and I see no reason to deny it, especially since *pro se* habeas petitions and any supporting submissions must be treated "with a measure of tolerance." *Donahue v. Grondolsky*, No. CIV.08-5533 (NLH), 2009 WL 3754045, at *3 (D.N.J. Nov. 2, 2009), *aff'd*, 398 F. App'x 767 (3d Cir. 2010) (citations omitted). Ellis's Motion will therefore be granted.

3

Government was misconstruing it as attempting to state due process violations (*see generally* Doc. 10). The Petition has been fully briefed and is now ripe for review.

## II. Discussion

"A challenge to the BOP's execution of a sentence is properly brought under 28 U.S.C. § 2241." *Donahue v. Grondolsky*, 398 F. App'x 767, 770-71 (3d Cir. 2010) (citation omitted). Although Ellis claims he is not raising due process arguments, his challenging of the evidence the DHO relied (and failed to rely) upon are, in fact, due process challenges. *See id.* at 771-72 (analyzing alleged failure of DHO to consider exculpatory evidence and alleged insufficiency of the evidence under the Supreme Court's due process precedents). The *Donahue* court summarized the procedures that federal inmates like Ellis are entitled to. *Id.* at 771 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974); 28 C.F.R. § 541.17(a)–(d)). Beyond ensuring Ellis was afforded those procedures,[2] my review of the DHO's decision is limited to ensuring that the "action against him was not arbitrary, and that the ultimate decision has some evidentiary support." *Anderson v. Bledsoe*, No. 1:12-CV-0155, 2012 WL 1414836, at *4 (M.D. Pa. Apr. 24, 2012), *aff'd*, 511 F. App'x 143 (3d Cir. 2013). Ellis's Petition can therefore be reduced to two questions: whether his proffered exculpatory evidence was improperly excluded, *see Wolff*, 418 U.S. at 563-67, and whether there was "some evidence" to support the DHO's decision, *Superintendent v. Hill*, 472 U.S. 445, 457 (1985).

As to whether the DHO improperly failed to consider Ellis's exculpatory evidence, it is clear from the record that Ellis declined to present any documentary evidence at his hearing, present any witnesses, or otherwise call the job application and the full email chain

---

[2] The record unequivocally shows Ellis was afforded all of these procedures: "he received written notice of the disciplinary charge at least twenty-four hours prior to the hearing; he was given an opportunity to present witnesses and evidence in his defense (though he chose not to do so); he was represented by [a staff representative]; and he was given a written statement explaining the DHO's decision." *Anderson v. Bledsoe*, 511 F. App'x 143, 145 (3d Cir. 2013).

4

between himself and Martin to the attention of the DHO. (*See* Doc. 1 at 34). Ellis was therefore not denied due process when the DHO did not consider evidence that Ellis failed to submit. *Anderson v. Bledsoe*, 511 F. App'x 143, 145 (3d Cir. 2013); *Donahue v. Grondolsky*, 398 F. App'x 767, 771 (3d Cir. 2010).

It is also clear from the record that there was some evidence to support the DHO's decision. Reliable confidential informants told Lt. Prutzman that Ellis and Bryant-Smith were using magazines to smuggle suboxone into the prison; drugs were found on page thirty of a magazine addressed to Bryant-Smith a day before Martin emailed Ellis about a thirty-page job application; and Ellis could not explain why unknown individuals from outside the prison were depositing large sums of money into his account. (*See* Doc. 1 at 22-23, 34-36). Ellis maintains that there was no evidence tying him to the particular magazine in this case, (*see, e.g.*, Doc. 10 at 8), but the statements from informants elucidating Ellis's modus operandi and the emails between Ellis and Martin were plenty. *See Donahue*, 398 F. App'x at 772-73 (holding some evidence supported DHO's decision where contraband was found taped to petitioner's property located in a common area, and distinguishing it from "a case where contraband was found concealed within a structure that was not assigned to any particular inmate"). Here, the magazine was addressed to Bryant-Smith, whom reliable informants connected to Ellis and his suboxone distribution operation. There is therefore some "evidence in the record that could support the conclusion reached by the disciplinary board," *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013), namely, so Ellis was not denied due process.

### III. Conclusion

For the reasons stated above, Ellis's Petition will be dismissed.

An appropriate order follows.

January 17, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

5